*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-PR-846

IN RE PEARL ROBINSON; BRUCE E. GARDNER, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(INT-358-14)

(Hon. Gerald I. Fisher and Hon. Jonathan H. Pittman, Trial Judges)

(Submitted June 23, 2021                    Decided August 18, 2022)

*Bruce Gardner*, pro se.

Before GLICKMAN and MCLEESE, *Associate Judges*, and THOMPSON, *Senior Judge*.[*]

PER CURIAM: Appellant Bruce E. Gardner is a court-appointed guardian and conservator. Mr. Gardner asked the trial court to approve compensation for work performed on behalf of his ward, Ms. Pearl Robinson. The trial court granted that request in part and denied it in part. We affirm in part, vacate in part, and remand for further proceedings.

---

[*] Judge Thompson was an Associate Judge at the time of submission. She began her service as a Senior Judge in February 2022.

## I.  Background

Mr. Gardner sought approximately $45,000 in compensation, claiming an hourly rate of $300.  The trial court awarded Mr. Gardner approximately $33,000.  The trial court generally accepted Mr. Gardner's hourly rate of $300, but reduced the rate to $90 for certain non-legal tasks and $25 for less complex non-legal tasks.  The trial court also disallowed some claimed hours and expenses.

## II.  Hourly Rate

Mr. Gardner challenges the trial court's reduction of his hourly rate.  We agree that a remand is necessary on this issue.

### A.  Contract

Mr. Gardner argues that the trial court was required to compensate him at an hourly rate of $300 for all of the claimed hours, because Mr. Gardner had a valid

and enforceable contract with Ms. Robinson to be compensated at that rate. We disagree.

According to Mr. Gardner, the contract was made in November 2014, just days before Ms. Robinson was found to be incapacitated. At that time, Mr. Gardner had not yet been appointed guardian/conservator and instead was a court-appointed attorney representing Ms. Robinson in connection with the petition to appoint a guardian/conservator. Ms. Robinson initially opposed the petition, but she withdrew her opposition and requested the appointment of Mr. Gardner.

We have previously expressed doubts about the validity of the claimed contract between Mr. Gardner and Ms. Robinson. *In re Robinson*, 216 A.3d 887, 890 (D.C. 2019) (per curiam) ("[I]t is far from clear that . . . Ms. Robinson -- who was deemed incapacitated by the court -- . . . was capable of entering into a legally binding contract with Mr. Gardner . . . ."). The trial court in this case also expressed grave concerns about Mr. Gardner's conduct in connection with the alleged contract. Specifically, the trial court noted that Mr. Gardner had not advised the trial court at the time of the appointment that he had negotiated a contract for compensation with Ms. Robinson, whom the court had just found to be incapacitated. Such a disclosure

4

"would have raised red flags about a possible conflict of interest." In the trial court's view, such a disclosure would also have made it highly unlikely that Mr. Gardner would have been appointed. The trial court was "profoundly disturbed" by the ethical questions created by the alleged agreement.

Mr. Gardner does not directly address the ethical concerns raised by the trial court. He does contend, however, that the agreement was valid as a matter of contract law. We need not address that issue, because we agree with the trial court that Mr. Gardner's compensation from the funds of Ms. Robinson's estate is governed by statute rather than by Mr. Gardner's alleged contract with Ms. Robinson. *See* D.C. Code § 21-2060(a) (providing for compensation for court-appointed guardians and conservators "[a]s approved by order of the court"); *In re Robinson*, 216 A.3d at 889 ("The compensation of court-appointed guardians is governed by D.C. Code § 21-2060(a) . . . ."); Super. Ct. Prob. R. 308(a) (compensation for court-appointed guardians and conservators from estate of ward "must be approved by Order of the Court before being paid"), superseded by Super. Ct. Prob. R. 322(a) (providing that court-appointed guardians and conservators are entitled to reasonable compensation from assets of the ward "[a]s approved by prior court order") (effective Aug. 22, 2022).

We are not persuaded by Mr. Gardner's reliance on *In re Estate of Grealis*, 902 A.2d 821 (D.C. 2006). That case held "that when attorney's fees are not paid from the estate of a protected individual (or from the court's Guardianship Fund) but rather from private funds, no statutory basis exists for requiring court approval." *Id.* at 822. Mr. Gardner is seeking compensation from Ms. Robinson's estate, so this case is governed by § 21-2060(a), not by *In re Estate of Grealis*.

## B. Claim and Issue Preclusion

Mr. Gardner argues in passing that the trial court was required by principles of claim preclusion and issue preclusion to deem his $300 hourly rate reasonable, because that rate had previously been deemed reasonable in connection with earlier compensation applications in this case. We disagree.

In an earlier appeal, Mr. Gardner made a similar argument: that the "law of the case" doctrine precluded the trial court from finding an hourly rate unreasonable if the hourly rate had been approved in connection with earlier requests for compensation. *In re Robinson*, 216 A.3d at 890. We disagreed, explaining that trial courts are not required to find an hourly rate "reasonable simply because that rate

had been approved, without analysis, in an earlier compensation request decided by a different judge and relating to a different time period." *Id.* For similar reasons, we disagree with Mr. Gardner's invocation of principles of claim preclusion and issue preclusion. Mr. Gardner provides no authority supporting the idea that such principles should prevent a trial court from making an independent determination as to the reasonableness of the hourly rate claimed in a given compensation application. Moreover, we see no reason to preclude such an independent determination. On the other hand, prior rulings approving an hourly rate are certainly relevant to the determination whether that hourly rate is reasonable.

### C.  Reasonableness of Reduction in Hourly Rate

Mr. Gardner challenges the trial court's decision to reduce Mr. Gardner's hourly rate to $90 for most non-legal tasks (such as writing checks) and $25 for less complex non-legal tasks (such as shopping for Ms. Robinson). The trial court gave two reasons for its ruling. First, the trial court noted that $90 is the maximum hourly rate awarded to court-appointed guardians who are paid from public funds when a ward's estate lacks adequate funds to pay compensation. *In re Goodwin*, 275 A.3d 283, 287-88 (D.C. 2022). We have recently held, however, that "the fact that $90 is

the hourly rate paid to guardians when an estate's assets are depleted does not mean that should be viewed as the reasonable rate for all non-legal guardianship services." *In re Robinson*, 216 A.3d at 892.

Second, the trial court considered information from the Bureau of Labor Statistics about the hourly wage paid to employees for various non-legal tasks that Mr. Gardner had performed. We do not doubt that such information is potentially relevant. As we have explained, the trial court may have the authority to reduce Mr. Gardner's hourly rate for non-legal tasks, either "because that rate is generally unreasonable for non-legal guardianship [or conservator] services or because some of the services Mr. Gardner provided should reasonably have been provided by others at a reduced cost." *In re Robinson*, 216 A.3d at 891-92; *cf. In re Gardner*, 268 A.3d 850, 859 n.15 (D.C. 2022) ("An attorney may choose not to hire support staff to do [clerical] work . . . but that decision will not justify billing such work at the attorney's hourly rate."). Nevertheless, we think that further explanation would be necessary before such a determination would be warranted.

First, Mr. Gardner is not an employee, and he performed a variety of tasks as a guardian and conservator. It may be overly simplistic to reduce his hourly rate based on the salaries typically paid to employees who perform specific tasks.

Second, we have previously explained that the statutory duties of a court-appointed guardian are not "inherently legal." *In re Robinson*, 216 A.3d at 891. Moreover, Mr. Gardner argued in the trial court that fiduciaries performing services like those provided by Mr. Gardner were typically compensated at hourly rates ranging from $200 to $390. The trial court did not specifically address that argument.

Third, we note that the Superior Court has established a Probate Fiduciary Panel, for purposes of appointing guardians and conservators in Probate Division proceedings. *See* Administrative Order 19-06 (D.C. Super. Ct. May 22, 2019). Although there is no general statutory requirement that guardians and conservators be attorneys, *see* D.C. Code §§ 21-2043 and -2057, the Superior Court permits only qualified attorneys to be placed on the Fiduciary Panel, Administrative Order 19-06 at 1. That circumstance seems at least potentially relevant to the appropriate hourly rate at which guardians and conservators should be compensated.

We therefore remand this case to the trial court for further consideration of the reasonable rate at which Mr. Gardner should be compensated for the tasks the trial court deemed to be non-legal. *See, e.g.*, *In re Wilson*, No. 19-PR-1203, 2022 WL 2517352, at *4 (D.C. July 7, 2022) (remanding for trial court "to determine the reasonableness of the requested compensation" for administrative tasks).

### III.  Delay in Awarding Compensation

Mr. Gardner argues that the trial court unduly delayed a decision on his request for compensation, and the trial court therefore was required both to grant the requested compensation in full and to award prejudgment interest. We have recently held otherwise. *In re Gardner*, 268 A.3d at 857-58 (delay in ruling on guardian's request for compensation did not require trial court to grant petition in full or pay prejudgment interest).

For the reasons stated, the judgment of the Superior Court is affirmed in part and vacated in part, and the case is remanded for further consideration of the hourly rate at which Mr. Gardner should be compensated for tasks the trial court determined to be non-legal.

*So ordered.*